IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MONICA IVEN,

      Plaintiff,

v.                                                     CIV 21-0541 WJ/DLM

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

      Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on Plaintiff Monica Iven's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum filed on February 14, 2022. (Doc. 22.) Having considered the record, submissions of counsel, and relevant law, the Court recommends that Iven's motion be granted in part.[1]

**I.     Procedural History**

On March 28, 2018, Ms. Monica Iven filed an application with the Social Security Administration for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act (SSA) and protectively filed an application for Supplemental Security Income (SSI) under Title XVI of the SSA. (Administrative Record[2] (AR) at 269–83.) Iven alleged a disability onset date of June 22, 2011. (AR at 269, 276.) Disability Determination Services (DDS) determined that Iven was not disabled initially. (*Id.* at 93–112, 148–55.) On reconsideration, she

---

[1] Chief United States District Judge William P. Johnson entered an Order of Reference Relating to Social Security Appeals on March 31, 2023, referring this case to the undersigned Magistrate Judge "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." (Doc. 38.)

[2] Document 14 contains the sealed Administrative Record. (Docs. 14-2–9.) The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

was found disabled as of November 28, 2018, which made her eligible for SSI, but not for DIB.[3] (*See id.* at 113–47, 158–65.) Iven requested a hearing with an Administrative Law Judge (ALJ) to challenge the decision regarding DIB. (*Id.* at 166–67.)

Both Iven and a vocational expert (VE) testified during the *de novo* hearing. (*See id.* at 43–92.) ALJ Lillian Richter issued an unfavorable decision on November 3, 2020. (*Id.* at 12–32.) Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 264–66), which the Council ultimately denied on April 26, 2021 (AR at 1–6). Consequently, the ALJ's decision became the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.   The Sequential Evaluation Process and the ALJ's Findings

"The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is eligible for disability benefits, the Commissioner follows a sequential evaluation process. 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not "doing substantial gainful activity"; (2) she has a severe impairment or combination of impairments that has lasted or is expected to last for at least one year; and (3) her impairments

---

[3] SSR 83-20 explains:
> In title II cases, [DIB] may be paid for as many as 12 months before the month an application is filed. Therefore, the earlier the onset date is set, the longer is the period of disability and the greater the protection received.
> Under title XVI, there is no retroactivity of payment. [SSI] payments are prorated for the first month for which eligibility is established after application and after a period of ineligibility.

Titles II & XVI: Onset of Disability, SSR 83-20 (S.S.A. 1983).

2

meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), she is unable to perform her past relevant work. 20 C.F.R § 404.1520(a)(4)(i)–(iv); *see also* 20 C.F.R. § 404.1509; *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). RFC is an assessment of how a claimant's impairments affect her capacity to work and of what she "can still do despite . . . her limitations." SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient [RFC] to perform work in the national economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

Here, ALJ Richter first found that Iven "last met the insured status requirements of the Social Security Act on June 30, 2015." (AR at 18.) Consequently, Iven "had the burden of proving that she was totally disabled on" or before June 30, 2015. *See Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (citation omitted).

At Step One of the process, ALJ Richter found that Iven "did not engage in substantial gainful activity during the period from her alleged onset date of June 22, 2011[,] through her date last insured of June 30, 2015." (AR at 18 (citing 20 C.F.R. § 404.1571–76).)

At Step Two, the ALJ concluded that Iven "had the following severe impairments: osteoarthritis of the bilateral knees; obesity; and lumbago." (*Id.* (citing 20 C.F.R. § 404.1520(c)).) The ALJ noted that Iven had the following non-severe impairments: "hypothyroidism, dysphagia, status post hysterectomy, hypertension, shingles, . . . hiatal hernia[,]" anxiety disorder, and post concussive syndrome. (*Id.*)

At Step Three, the ALJ found that Iven "did not have an impairment or combination of impairments that met or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." (*Id.* at 19 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).) At Step Four, the ALJ considered the evidence of record and found that, through her date last insured, Iven

> had the [RFC] to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except she could occasionally stoop, but never kneel, crouch, or crawl. She could occasionally climb ramps and stairs. She could never climb ladders, ropes[,] or scaffolds. She should avoid exposure to vibration, unprotected heights, and hazardous machinery.

(*Id.* at 20.) Based on her review of the record and the testimony of the VE, ALJ Richter found that, through her date last insured, Iven "was capable of performing past relevant work as a storeowner, accounts payable clerk, and blood donor unit recruiter." (*Id.* at 24 (citing 20 C.F.R. § 404.1565).) The ALJ ultimately determined that Iven "was not under a disability, as defined in the Social Security Act, at any time from June 22, 2011, the alleged onset date, through June 30, 2015, the date last insured." (*Id.* at 24 (citing 20 C.F.R. § 404.1520(f)).)

**III.     Legal Standard**

The Court reviews the Commissioner's decision to determine whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). While a deficiency in either area is grounds for remand, *see Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012), the Court may neither reweigh the evidence nor substitute its judgment for the agency's, *see Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

To decide whether the ALJ applied the correct legal standards, the Court must determine whether she adhered to "the specific rules of law that must be followed in weighing particular

4

types of evidence in disability cases . . . ." *Lax*, 489 F.3d at 1084) (quotation marks and citation omitted). To determine whether substantial evidence supports the ALJ's factual findings, the "[C]ourt looks to [the] administrative record and asks whether it contains 'sufficien[t] evidence to support the agency's factual determinations.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). Substantial evidence "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (citation omitted).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

## IV.   Discussion

Iven argues that remand is warranted because: (1) the ALJ failed to properly assess the opinions of non-examining physician John R. Vigil, M.D.; and (2) the ALJ's RFC assessment is not based on substantial evidence because she failed to consider Iven's mental impairments.[4] (*See* Doc. 22 at 1–2.) The undersigned recommends granting the motion only on the basis that the ALJ erred by failing to consider Iven's mental impairments at step four.

### A.   **Iven has not demonstrated reversible error in the ALJ's analysis of Dr. Vigil's opinion.**

John Vigil, M.D., performed a consultative examination of Iven on June 4, 2020, at the

---

[4] Iven initially argued that the ALJ also erred in her assessment of the opinion of non-examining physician Sam Baker, M.D., and in finding that Iven could return to her past relevant work. (Doc. 22 at 1–2.) Iven conceded these arguments in her reply brief. (*See* Doc. 27 at 2, 7.)

behest of Iven's attorney. (*See* AR at 1052.) Vigil reviewed Iven's medical records and performed a 45-minute interview of and physical examination on Iven. (*Id.*) He concluded that Iven "has severe functional limitations" and that her "disabilities, including her chronic pain and comorbid obesity preclude her from performing even sedentary work on a full-time and sustained basis from at least 2014." (*Id.* at 1057.) He further opined that "Iven has significant depression and anxiety which is currently moderately severe and not optimally treated and would benefit from a psychiatric evaluation for possible medication management." (*Id.*)

The ALJ considered Vigil's opinion and found that the "assessment is not supported by the objective medical evidence of record, including physical examinations prior to [Iven's] date last insured that showed that [she] maintained a normal gait, without neurological deficits." (*Id.* at 23 (citing AR at 628–86).) The ALJ further found that Vigil's assessment is "inconsistent with and not supported by treatment records from 2014 in which [Iven] reported no back or knee pain and was only taking medication for her hypertension and hypothyroidism." (*Id.* (citing AR at 633–34).) Finally, ALJ Richter stated that "Vigil found that [Iven's] depression and anxiety prevented fulltime work but cited to no medical evidence that would support mental limitations." (*Id.*) The ALJ "noted that any conclusion regarding [Iven's] mental functioning are [sic] outside the scope of [Vigil's] examination and are also, based on his curriculum vita, outside of his expertise." (*Id.* (citing AR at 1063–68).)

Iven argues that ALJ Richter committed legal error in assessing Dr. Vigil's opinion for two reasons. (Doc. 22 at 14–16.) First, she asserts that the ALJ's conclusion regarding Vigil's assessment of her physical abilities is not supported by record evidence. (*Id.* at 14–15.) Second, she contends that the ALJ committed legal error in discounting Vigil's opinion on Iven's mental limitations. (*Id.* at 15–16.)

6

1. **Relevant Law**

Under the revised regulations found in 20 C.F.R. § 404.1520c, the ALJ must "consider[] the persuasiveness of [all medical] opinions using five factors: supportability; consistency; relationship with the claimant; specialization; and other factors, such as 'a medical source's familiarity with the other evidence in a claim.'" *See Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 (10th Cir. July 6, 2021) (quoting 20 C.F.R. § 404.1520c(c)) (subsequent citation omitted). Supportability and consistency "are the most important factors[,]" and the ALJ must explain how she considered those two factors in evaluating medical opinions. 20 C.F.R. § 404.1420c(b)(2). The ALJ may, but is not required to, address the remaining factors. *See id.*

The ALJ's persuasiveness finding "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" or if it "constitutes mere conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (citation omitted). An ALJ must "consider all relevant evidence in the case record[,]" *Silva v Saul*, No. 19-913 WJ/KK, 2020 WL 4220862, at *4 (D.N.M. July 23, 2020) (citing 20 C.F.R. §§ 404.1520b, 416.920b), and must provide the Court "with a sufficient basis to determine that appropriate legal principles have been followed[,]" *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation omitted).

2. **The ALJ's findings on Vigil's opinion regarding Iven's physical limitations complied with the regulations.**

The ALJ found that Vigil's assessment of Iven's physical limitations was not supported by objective record evidence. (AR at 23.) Specifically, the ALJ cited record evidence from San Juan Health Partners (SJHP) demonstrating that, prior to her date last insured, Iven had a normal gait on physical examinations, no neurological deficits, and no back or knee pain. (*Id.* (citing AR at

628–86).) The ALJ also noted that Iven "was only taking medication for her hypertension and hypothyroidism." (*Id.* (citing AR at 633–34).)

SJHP treatment records before Iven's date last insured reflect the ALJ's observations. Iven began treatment with SJHP on April 23, 2014, for hypothyroidism and hypertension. (AR at 630.) Iven, at 342.40 pounds with a BMI of 49.07, was described as "moderately obese." (*Id.* at 631.) Notably, regarding Iven's musculoskeletal system and extremities, the physical examination notes reflect that Iven complained of "left inner elbow pain with swimming" and showed a "normal gait." (*Id.* at 631.) Iven did not complain of pain or problems with her knees or back at the initial visit. (*See id.* at 630–32.) Later visits reflect a normal gait on May 30, 2014 (*id.* at 634), a diagnosis of morbid obesity when her BMI was recorded at 55.81 on June 26, 2014 (*id.* at 646), and a denial of joint, muscle or back pain and a finding of no edema on May 19, 2015 (*id.* at 654).

Iven argues that other record evidence supports Vigil's conclusion and that the ALJ "cherry-picked" record evidence to support a finding of non-disability while ignoring records that could support a finding of disability. (Doc. 22 at 15 (citing *Montoya v. Saul*, No. 1:18cv09831 LF, 2019 WL 6167951, at *10 (D.N.M. Nov. 20, 2019)).) She relies on two medical records in support. First, she cites a May 19, 2015 record from SJHP that reflects a BMI of 56.1. (*Id.* (citing AR at 654–55).) The ALJ referred to this group of records as well as to Iven's "elevated BMI." (*See* AR at 23 (citing AR at 628–86).) Iven also cites to a January 19, 2012 record from W. Doug Gurley, M.D., who reported that "x-rays show severe osteoarthritis of both . . . knees[,] . . . large peripheral osteophytes on" and subluxation of the femur and tibia, "woody edema[,]" varus angulation, a 10 degree flexion contracture of her right knee, and a 5 degree flexion contracture of her left knee. (Doc. 22 at 15 (citing AR at 445–46).) Yet the ALJ summarized the same record and expressly addressed most of these conditions. (AR at 22 (discussing "chronic woody edema[,]" the flexion

contracture findings in both knees, varus angulation, severe osteoarthritis, and recommended treatment options).) It is clear that the ALJ did not cherry-pick or ignore record evidence, as Iven argues. (*See* Doc. 22 at 15.)

Moreover, the ALJ considered this evidence together with other record evidence that showed Iven reported improvement with physical therapy and that the provider "discharged [Iven] with a good prognosis . . . ." (*See, e.g.*, AR at 22 (citing AR at 1302–03).) While Iven might interpret the record evidence differently than the ALJ has, it is not within this Court's purview to reweigh the evidence. *See Lax*, 489 F.3d at 1084 (courts may not "displace the agency's choice between two fairly conflicting views") (quotation and brackets omitted). Ultimately, Iven fails to show that the ALJ's analysis on this point was not supported by substantial evidence. The Court recommends denying the motion on this basis.

Iven also briefly complains that the ALJ found that Vigil's opinion was inconsistent with treatment records that showed Iven "reported no back or knee pain and was only taking medication for her hypertension and hypothyroidism." (Doc. 22 at 15 (citing AR at 23).) Iven asserts that "[t]he referenced records are largely focused on her morbid obesity," and she "had legitimate reasons for taking limited medication." (*See id.*) Although she does not flesh out her argument, it appears that Iven believes the ALJ failed to follow the procedure outlined in SSR 16-3p in assessing her complaints of pain. (*See id.*) *See also* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). The Court disagrees.

Social Security Ruling 16-3p defines the two-step process an ALJ must use to evaluate a claimant's symptoms. SSR 16-3p, 2017 WL 5180304, at *3–5. At the first step of the procedure, the ALJ "consider[s] whether there is an underlying medically determinable physical or mental impairment[] that could reasonably be expected to produce [the] individual's symptoms, such as

9

pain." *Id.* at *3. At the second step, the ALJ "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the] individual's ability to perform work-related activities . . . ." *Id.* In evaluating the complaints of pain and other symptoms, the ALJ considers the record evidence, the claimant's statements, medical and non-medical source statements, and the non-exhaustive list of factors in 20 C.F.R. § 404.1529(c)(3), including, in part, activities of daily living, medication to alleviate pain or other symptoms, treatment other than medication for pain relief, and measures other than treatment for pain relief. *See id.* at *3, 8; 20 C.F.R. § 404.1529(c)(3).

Aside from the ALJ's comment regarding pain medication, Iven does not pinpoint any particular problem with the ALJ's analysis under SSR 16-3p. (*See* Doc. 22 at 14–16.) Thus, the Court will only briefly outline the ALJ's treatment of the relevant factors. ALJ Richter considered evidence relating to Iven's daily activities, including her hearing testimony that she was unable to perform normal activities and that her husband and daughter took care of "most things around the house" after a serious motor vehicle accident in 2011. (*See* AR at 21.) The ALJ noted that Iven's daughter submitted a third-party function report in 2018 that reported Iven "was able to perform a rather normal level of activities of daily living, including performing personal care tasks, preparing complete meals, completing household chores, driving, and shopping for groceries and personal items on a regular basis." (*Id.* at 22 (citing AR at 351–60).) The ALJ spent time discussing Iven's medical treatment after the accident, noting that she sustained injuries to her knees, neck, low back, and left shoulder and began physical therapy the next month. (AR at 21 (citing AR at 443–47, 1069–71, 1076–1165).) "[P]hysical therapy records document[ed] incremental improvement in her pain and functioning with treatment." (*Id.* (citing AR at 1076–1348).)

The ALJ noted that "in January 2012, at an orthopedic evaluation, [Iven] endorsed having

only intermittent bilateral knee pain." (*Id.* at 22; *see also id.* at 445–46.) The provider recommended "organized nonoperative management[,]" weight loss, and exercise, and started Iven on Naprosyn 440 twice a day. (*Id.* (citing AR at 443–47).) "That same month, [Iven] reported significant improvement in her neck, back, and shoulder pain at a physical therapy appointment." (*Id.* (citing AR at 1302–03).) Iven reported that she felt "really strong" and "that she could walk a circle around SAM'S Club, which she could not do at her initial evaluation." (*Id.* (citing AR at 1302–03).) The ALJ found that "[c]onsistent with [Iven's] overall symptom improvement, on physical examination she had -4/5 to 5/5 strength in all muscle groups with no mention of gait abnormalities noted." (*Id.* (citing AR at 1302–03).)

The ALJ remarked that there was "a significant gap" in the record evidence between February 2012 and December 2013. (*Id.*) Iven started treatment with SJHP in 2014, made "no complaints of knee or back pain . . . through the end of 2015, with physical examinations showing no gait abnormalities." (*Id.* (citing AR at 682–86).) In sum, the ALJ found that "while the medical record suggests some physical limitations, the record as [a] whole does not demonstrate [Iven] is incapable of performing physical work activity, given the objective findings of records, showing no significant gait abnormalities, weakness, or neurological deficits during the period at issue, inconsistent with [her] testimony." (*Id.* (citing AR at 443–47, 628–86, 1429–33).) The ALJ emphasized that "treatment records just prior to [Iven's] date last insured[] show no complaints of or treatment for any back or joint pain." (*Id.* (citing AR at 628–86).)

Although Iven argues that she had legitimate reasons for not taking medication for her complaints of pain, the ALJ's SSR 16-3p analysis did not hinge on this issue. Rather, it was one of several factors the ALJ examined. Indeed, the Tenth Circuit has found that "an ALJ may legitimately consider a claimant's lack of treatment for a particular impairment in determining the

11

limiting effect of that impairment. *Bisbee v. Saul*, No. CV 20-155 JAP/GJF, 2021 WL 3555796, at *3 n.4 (D.N.M. Mar. 16, 2021) (discussing *Keyes-Zachary*, 695 F.3d at 1168). Iven fails to establish that ALJ Richter's SSR 16-3p analysis was deficient, and the Court recommends denying the motion on this basis.

> **3. Iven fails to establish reversible error in the ALJ's analysis of Vigil's opinion regarding her mental limitations.**

Finally, Iven argues that the ALJ erred in analyzing Vigil's findings regarding Iven's mental limitations. (Doc. 22 at 15–16.) I do not find that Iven's arguments on this point warrant remand.

To begin, Iven complains that the ALJ discounted Vigil's qualifications to opine on depression or anxiety-related limitations. (*Id.* at 16; *see also* AR at 23 (ALJ stating that Vigil's conclusions about Iven's mental limitations are "outside the scope" of his exam and his expertise).) Any error in this regard does not warrant remand, however, because Iven admits that "Vigil *did not opine* on [her] mental limitations"—at least as far as they were caused by depression and anxiety. (*See id.* at 15 (citing AR at 1057) (emphasis added).) Critically, Vigil opined that Iven's "*chronic pain and comorbid morbid* obesity preclude her from performing even sedentary work on a full-time and sustained basis from at least 2014." (AR at 1057 (emphasis added).) He did not opine that her anxiety or depression precluded her from working. (*See id.*)

Similarly, to the extent that the ALJ discounted Vigil's opinion as unsupported by record evidence of mental limitations, there is no error because, again, "Vigil *did not opine* on [her] mental limitations . . . ." (*See id.*) The ALJ found that Vigil failed to cite medical evidence that would support mental limitations due to anxiety or depression. (AR at 23.) But Vigil did not express any such opinion. Rather, he opined that "Iven has significant depression and anxiety

which is *currently* moderately severe and not optimally treated and would benefit from a psychiatric evaluation for possible medication management." (*Id.* (emphasis added).) Vigil examined Iven in 2020, approximately five years after her date last insured. He did not opine on whether Iven's depression or anxiety affected her ability to work *prior to her date last insured* in 2015. (*See id.*) In short, Iven fails to show that the ALJ's comments on these issues constitute legal error. The undersigned recommends denying the motion on this basis.

### B. The ALJ erred by failing to consider Iven's mental limitations at step four.

Iven argues that, with respect to her mental limitations, ALJ Richter "mischaracterized evidence at step two and ignored critical impairments at step four, rendering the decision unsupported by substantial evidence." (Doc. 22 at 18.) The Court disagrees with at least one point but recommends remand on the basis that the ALJ failed to consider Iven's mental limitations at step four.

#### 1. Any failure to find Iven's mental impairments non-severe at step two is not reversible error.

Iven begins by misstating the ALJ's summation of her counseling: she asserts that at step two, the ALJ stated "she only received a 'couple of counseling sessions with her husband'" (*id.* at 17), implying that the ALJ believed she attended two sessions, none of which were by herself. The ALJ made no such statement. Rather, the ALJ noted that during the relevant period, treatment records "show that [Iven] only received short-term treatment for mental health issues, including a couple of counseling sessions with her husband." (AR at 18 (citing AR at 1395–1410).) The Court interprets this to mean that the ALJ understood that Iven normally attended counseling sessions alone, but her husband attended a couple of sessions with her. Iven fails to show error on this discrete point.

Iven next takes issue with the ALJ's decision to find her mental limitations non-severe. She asserts, "[a] determination that an impairment is 'severe' at step two requires only a *de minimus* showing." (Doc. 22 at 18 (citing *Grogan*, 399 F.3d at 1263).) Iven fails to demonstrate that the ALJ's finding merits remand. Tenth Circuit precedent makes clear that "a claimant [need] show only '*a* severe' impairment—that is, *one* severe impairment—to avoid a denial of benefits at step two." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing 20 C.F.R. § 404.1520(a)(4)(ii)). "As long as the ALJ finds one severe impairment, the ALJ may not deny benefits at step two but must proceed to the next step." *Id.* As ALJ Richter found other impairments were severe, any failure to find mental limitations "severe at step two is not reversible error . . . ." *See id.* The undersigned recommends denying the motion on this issue.

## 2. The ALJ failed to discuss Iven's mental limitations at step four.

Iven argues that the ALJ did not adequately consider record evidence concerning her mental limitations at step four, amounting to legal error. (Doc. 22 at 18–19.) On this point, the undersigned agrees.

Under the regulations, the "ALJ must evaluate the effect of a claimant's mental impairments on her ability to work . . . ." *Wells v. Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013) (citing 20 C.F.R. § 404.1520a(b)–(d)) (subsequent citation and parentheses omitted). This means that the ALJ will determine at step two whether mental impairments are severe or non-severe, and at step three whether the impairments meet or equal a listing. *See id.*; *see also* 20 C.F.R. § 404.1520(a)(4)(ii)–(iii). Even if the ALJ finds that a claimant's mental limitations are "non-severe" and/or do not meet a listing, the ALJ must still "consider and discuss them as part of [her] RFC] analysis at step four." *See Wells*, 727 F.3d at 1064 (citing 20 C.F.R. § 404.1545(a)(2)) (subsequent citation omitted). In *Wells*, the Tenth Circuit examined the question that is at the heart

14

of the issue in this case: "how much further discussion of a non-severe impairment is required at step four?"[5] *See id*.

The ALJ in *Wells* found that the claimant's "alleged mental impairments were medically determinable but non-severe" and opined that such non-severity did "not result in further limitations in work-related functions in the [RFC] assessment" at step four. *See id.* at 1065, 1069. The Tenth Circuit noted that such a statement, by itself, would be error, as "a finding of non-severity alone would not support a decision to prepare an RFC assessment omitting any mental restriction." *Id.* at 1065. Instead, the ALJ must support the assessment with *some* discussion of a claimant's mental restrictions in order to meet the substantial evidence standard. *See id.*

Judges in this district and elsewhere have looked to *Wells* to decide whether an ALJ's discussion of impairments at step four is enough. *See, e.g.*, *Robert R. v. Kijakazi*, No. CV 21-1062 MV/SCY, 2022 WL 12374093, at *5–10 (D.N.M. Oct. 21, 2022); *Susan v. v. Kijakazi*, No. CV 21-364 SCY, 2022 WL 2982925, at *3–5 (D.N.M. July 28, 2022); *Saiz v. Kijakazi*, No. CV21CV0310 KRS, 2022 WL 1078576, at *3–5 (D.N.M. Apr. 11, 2022). In *Saiz*, for example, the ALJ found at step two that the claimant's mental impairments were non-severe. 2022 WL 1078576, at *3. At step four, the ALJ very briefly found that the claimant had "received only 'minimal' mental health treatment, that he ha[d] not required inpatient psychiatric hospitalization, and that 'his mental health exams overall appear to show normal limits.'" *Id.* at *4 (quotation omitted). The court found that although the ALJ's discussion at step four "was 'far from comprehensive,'" it was enough to establish that substantial evidence supported the RFC. *Id.* (quoting *Wells*, 727 F.3d at 1069).

---

[5] Although neither party discussed *Wells* or its progeny in the context of this issue, the undersigned finds that the Tenth Circuit's binding precedent is on point and controls under these circumstances.

The Commissioner urges the Court to find that ALJ's discussion of Iven's mental impairments was adequate and met the substantial evidence standard. (*See* Doc. 26 at 8–10.) The Commissioner points to the ALJ's discussion of Iven's mental impairments on pages 18–19 of the opinion. (*See id.*) There, the ALJ noted that Iven "only received short-term treatment for mental health issues," and that "a comprehensive neuropsychological assessment 'revealed no clinically significant evidence of organic disruption of attention, memory, or higher-level cognitive flexibility.'" (*Id.* at 8 (quoting AR at 18).) The ALJ also found "no more than mild limitations" in the four broad areas of mental functioning, i.e., the 'paragraph B' criteria." (*Id.* (citing AR at 18–19).)

As the Commissioner tacitly acknowledges in her recitation of the ALJ's findings, the entirety of the ALJ's discussion regarding Iven's psychiatric impairment (anxiety) occurred at steps two and three; there is no reference to the impairment or its symptoms at step four. (*See* Doc. 26 at 8–9 (citing AR at 18–19).) The Commissioner notes the boilerplate language reciting that, "as part of her RFC finding, [the ALJ] further indicated that she had considered all of [Iven's] medically determinable impairments and alleged symptoms, but found the medical and other evidence not entirely consistent with the degree of limitation alleged." (*Id.* at 9 (citing AR at 21).) This boilerplate language does not constitute "a narrative discussion satisfying the ALJ's duty to consider the impairments," including Iven's mental impairments and related symptoms, "at every step of the disability determination process, including step four." *See Susan V.*, 2022 WL 2982925, at *4.

As Iven notes, the ALJ relied on a December 2011 neuropsychological evaluation conducted by Robert Sherrill, Jr., PhD at steps two and four. (*See* Doc. 22 at 19; AR at 19, 21.) Iven's counselor, Rebecca Jasper, referred Iven to Sherrill "for an assessment of her capacity for

16

attention, memory and cognitive flexibility, as well as of her emotional status." (AR at 1431.) Sherrill conducted five tests: the Halstead-Reltan Neuropsychological Battery; the Integrated Visual and Auditory Continuous Performance Test; the Wechsler Memory Scale, Third Edition; a Personality Assessment Inventory; and a Trauma Symptom Inventory. (*Id.* at 1432.) Sherrill reported that with a "minor exception[,][6] . . . the cognitive examination was entirely within normal limits" and showed normal attention, memory, and cognitive flexibility. (*Id.*) ALJ Richter explicitly mentioned the cognitive examination at steps two and four. (AR at 19, 21 (citing AR at 1429–33).) She did not, however, mention the other test results or diagnostic impressions related to Iven's psychiatric disorder—anxiety. (*See id.*) Sherrill found that the remaining tests "were notable for . . . moderate anxious arousal (about the 90th percentile) with autonomic symptoms[;] moderate defensive avoidance of this emotional stress[;]" and a tendency to unconsciously convert emotional stress "into diffuse physical complaints for which physicians can identify little or no disease basis . . . ." (*Id.* at 1432.) The diagnostic impression included "anxiety disorder not otherwise specified, with post-traumatic features" and "proneness to somatization of anxiety." (*Id.*)

The ALJ found at step two that she was "persuaded by" Sherrill's opinion that Iven is "cognitively intact" but was otherwise silent regarding Sherill's opinion on Iven's psychiatric impairments. (*See id.* at 19.) Similarly, the ALJ noted at step four that the record evidence demonstrated Iven had "no clinically significant evidence of an organic disruption in [her] attention, memory, or higher-level cognitive flexibility." (AR at 21.) Yet the ALJ made no mention of Sherrill's findings on Iven's psychiatric disorder or symptoms. (*See id.*)

The Court finds the reasoning in *Robert R.* persuasive here. There, the ALJ acknowledged

---

[6] "The only minor exception to [Iven's] otherwise very good performance was mild impulsivity in responding to visual stimuli which were non-targets" and was "judged to be not clinically significant." (AR at 1432.)

the claimant's allegations that he had anxiety and depression and was unable to work due to symptoms of these and other mental impairments. 2022 WL 12374093, at *7. "But the reasons the ALJ gave for discounting [the claimant's] subjective symptom evidence relate[d] to [a separate] neurocognitive disorder and associated memory problems." *Id.* The ALJ commented on the lack of evidence regarding a severe head or brain injury, that the claimant failed to seek treatment after an assault, and that the record contained results from "[a]n MRI of the brain, EEG testing, and neurological examinations" that were "entirely normal." *Id.* (citation omitted). The court found that the ALJ's statements "relate[d] to neurocognitive functioning as a result of traumatic brain injury[,]" which had "no connection to [the claimant's] psychiatric disorders of anxiety, depression, or PTSD . . . ." *Id.* Because the ALJ did not explain any link between the psychiatric disorders and the traumatic brain injury, and because the ALJ provided no discussion of how the psychiatric disorders affected the RFC, the court found that the ALJ's RFC assessment was not supported by substantial evidence. *See id.* at *7–9.

Although the circumstances in this case present a closer call, the outcome here is similar. The ALJ found that Iven had non-severe mental impairments including anxiety disorder and post concussive syndrome. (AR at 18.) She relied on a neurocognitive examination that assessed normal cognitive functioning related to attention, memory, and cognitive flexibility. (*See id.* at 19, 21.) The record evidence establishes that symptoms of post-concussive syndrome include problems with concentration, attention, and memory. (*See id.* at 585.) "That the ALJ addressed evidence of [Iven's] neurocognitive functioning does not mean that the ALJ also addressed evidence of [her] non-neurocognitive mental disabilities" associated with anxiety or its related symptoms. *See Robert R.*, 2022 WL 12374093, at *6. The ALJ does not explain how Iven's cognitive functioning is associated with her anxiety or other psychiatric symptoms. Without some explanation, and

18

because the ALJ made no other mention of Iven's psychiatric impairments at step four such as her treatment notes with Jasper, the Court agrees that the ALJ failed to discuss the psychiatric mental impairment at step four. Thus, substantial evidence does not support the RFC assessment, and the undersigned recommends granting the motion to remand on this basis.

## V.     Conclusion

Iven fails to demonstrate any error in the ALJ's assessment of Vigil's opinion or in the ALJ's step two determination of severity. Iven has established that substantial evidence does not support the ALJ's RFC assessment, because the ALJ failed to discuss Iven's psychiatric mental impairment at step four. Consequently, the Court recommends granting in part the motion to remand. I further recommend that the Court direct the ALJ to explicitly consider, at step four, Iven's psychiatric impairment(s) and symptoms in the assessment of the RFC.

**IT IS HEREBY RECOMMENDED** that Iven's Motion to Reverse and Remand (Doc. 22) be **granted in part** as outlined above.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE