**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

MONICA IVEN,

      Plaintiff,

v.                                                              CIV 21-0541 WJ/DLM

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

      Defendant.

## ORDER ADOPTING MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on Magistrate Judge Damian L. Martinez's Proposed Findings and Recommended Disposition (PFRD), filed June 1, 2023 (Doc. 39); Defendant's Objections to the Magistrate Judge's Report & Recommendation, filed June 15, 2023 (Doc. 40); and Plaintiff's Response to Defendant's Objections to Magistrate Judge's Report and Recommendations, filed July 13, 2023 (Doc. 45). Having reviewed the record, the Objections, and Plaintiff's Response to the Objections, the Court will adopt the PFRD in full.

**A. Legal Standard**

When resolving objections to a magistrate judge's proposed findings and recommended disposition, "the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C). The Tenth Circuit requires a "district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation" when conducting a *de novo* review of a party's timely, specific objections to the magistrate judge's PFRD. *In re Griego*, 64 F.3d 580, 583-84 (10th Cir.

1995) (citation omitted). A district court need not, however, "make any specific findings; the district court must merely conduct a *de novo* review of the record." *Garcia v. City of Albuquerque*, 232 F.3d 760, 766 (10th Cir. 2000).

**B.   Analysis**

On March 28, 2018, Plaintiff filed applications with the Social Security Administration for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act and for Supplemental Security Income (SSI) under Title XVI of the Act. (Administrative Record[1] (AR) at 269–83.) The application was denied initially (AR at 93–112, 148–55), but on reconsideration Plaintiff was found to be disabled as of November 28, 2018, making her eligible for SSI. (AR at 113–47, 158–65). In an effort to obtain DIB, Plaintiff requested a hearing with an ALJ (AR at 166–67), which ALJ Lillian Richter conducted on August 20, 2020. (AR at 43–92.) On November 3, 2020, ALJ Richter issued an unfavorable decision, finding that Plaintiff was not disabled during the relevant period. (AR at 12–32.) On April 26, 2021, the Appeals Council denied Plaintiff's request for review (AR at 1–6), which made ALJ Richter's decision the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Plaintiff then filed her Complaint in this Court seeking review of the Commissioner's decision. (Doc. 1.) Following briefing on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Docs. 22; 26–27), the Magistrate Judge issued his PFRD, which recommended that Plaintiff's motion be granted in part. (Doc. 39.)

The Magistrate Judge identified two broad claims advanced by Plaintiff in her briefing: (1) that the ALJ failed to properly assess the opinions of John R. Vigil, M.D.; and (2) that the ALJ's

---

[1] Documents 14–1 through 14–9 contain the sealed Administrative Record in this case. (*See* Doc. 14.) Like the Magistrate Judge in his PFRD, the Court will cite the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

RFC assessment was not based on substantial evidence because she failed to adequately consider Plaintiff's mental impairments. (*Id.* at 5 (citing Doc. 22 at 1–2).) The Magistrate Judge addressed both of these arguments as well as various sub-arguments in his PFRD and ultimately recommended that the Court grant Plaintiff's motion to remand in part. (*See id.*) In her Objections to the PFRD, the Commissioner takes issue with only the Magistrate Judge's recommendation regarding the discrete claim on which the motion was granted:  that the ALJ committed reversible error by failing to adequately consider Plaintiff's mental impairments at step four of her analysis. (*See* Doc. 40; *see also* Doc. 39 at 14–19.) In reaching the conclusion that the ALJ erred in her step-four analysis, the Magistrate Judge relied upon the framework and legal principles articulated in the Tenth Circuit's decision in *Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2013). (*See* Doc. 39 at 14–15.)

Principally, the Magistrate Judge cited *Wells* for the proposition that "[e]ven if the ALJ finds that a claimant's mental limitations are 'non-severe' and/or do not meet a listing, the ALJ must still 'consider and discuss them as part of [her RFC] analysis at step four.'" (Doc. 39 at 14 (quoting *Wells*, 727 F.3d at 1064).) In the Magistrate Judge's assessment, both *Wells* and this case required examination of the same question: "how much further discussion of a non-severe [mental] impairment is required at step four?" (*Id.* at 14–15 (quoting *Wells*, 727 F.3d at 1064).) The *Wells* court answered this question, in the Magistrate Judge's view, by concluding that "the ALJ must support the [RFC] assessment with *some* discussion of a claimant's mental restrictions in order to meet the substantial evidence standard." (*Id.* at 15 (citing *Wells*, at 1065).) The Tenth Circuit observed the following:

> In assessing a claimant's RFC, "[t]he adjudicator must remember that the limitations identified in the 'paragraph B' . . . criteria [for severity] are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by

> itemizing various functions contained in the broad categories found in paragraphs
> B and C of the adult mental disorders listings in 12.00.

*Wells*, 727 F.3d at 1069 (quoting Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *4 (internal citations omitted)). The court went on to emphasize that the "RFC assessment must include a narrative discussion describing how the evidence *supports each conclusion*, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting SSR 96-8p, 1996 WL 374184, at *7). The Commissioner maintains that *Wells* is distinguishable and that the ALJ did not, contrary to the Magistrate Judge's findings, ignore evidence about Plaintiff's mental impairments in assessing Plaintiff's RFC. (Doc. 40 at 3–6.)

To the extent that the Commissioner suggests that there are factual differences between *Wells* and this case, the Court largely agrees. In *Wells*, for example, the ALJ "used language suggesting he had excluded [the plaintiff's alleged mental impairments] from consideration as part of his RFC assessment, based on his determination of non-severity." 727 F.3d at 1065. The Court can identify no analogous language in the ALJ's decision here. (*See* AR at 18–19.) Additionally, in *Wells*, the "ALJ did go on to discuss [the plaintiff's] mental functioning, to some extent, in the credibility portion of his RFC analysis[,] . . . [which] may have been adequate to fulfill his duty at step four to determine [the plaintiff's] mental RFC." 727 F.3d at 1065. But, here, the ALJ did not discuss Plaintiff's anxiety-related symptoms in his step-four discussion of Plaintiff's subjective symptom evaluation. (*See* AR at 20–21.)

Attempting to draw distinctions between the ALJ's "paragraph B" findings in this case and *Wells*, the Commissioner notes that the *Wells* ALJ found "mild"[2] limitations, whereas the ALJ here

---

[2] The Tenth Circuit indicated the following: "[T]he ALJ determined that Ms. Wells' mental impairments would cause her no more than 'mild' limitations in each of the first three functional areas." *Wells*, 727 F.3d

found "*no more than mild* limitations." (Doc. 40 at 5.) The Commissioner argues that this language "could be interpreted" to suggest that the ALJ's "paragraph B" criteria assessment implied that the ALJ found no limitations at step four. (*Id*.) The Commissioner's argument in this regard is not compelling and, in fact, borders on a post-hoc rationalization not apparent from the ALJ's explicit reasoning. After all, the ALJ did not find "no impairment" in the "paragraph B criteria"; he found "no more than mild limitations." (*See* AR at 18–19.) And, critically, the ALJ's step-two "no more than mild limitations" finding cannot be substituted for a proper step-four analysis.

The Commissioner submits that *Wells* is distinguishable from this case in one final respect. She notes that the Tenth Circuit found specific step-four conclusions unsupported by substantial evidence in *Wells* and suggests that, in contrast, "the [M]agistrate [J]udge did not find that any of the ALJ's findings about Plaintiff's mental impairments lacked substantial evidence." (Doc. 40 at 4 (citing Doc. 39 at 13–19).) The Commissioner attempts to characterize the Magistrate Judge's determination as a "lack of articulation" finding. (*See id*.) To the contrary, though, the Magistrate Judge unequivocally found that "substantial evidence does not support the RFC assessment." (Doc. 39 at 19.) Underlying this finding was the Magistrate Judge's conclusion that the ALJ failed to offer any discussion of Plaintiff's psychiatric impairments at step four coupled with his finding that the ALJ did not explain how Plaintiff's cognitive functioning was associated with her anxiety and related psychiatric symptoms. (*Id*. at 18–19.) In his PFRD, the Magistrate Judge indicated that the ALJ failed to mention "treatment notes with [Rebecca] Jasper"[3] or "[Dr.] Sherrill's findings

---

at 1068. Although the Commissioner seizes upon the placement of the quotation marks in *Wells* to draw a distinction, it is not clear to the Court that there is in fact factual distinction worth noting.

[3] Plaintiff highlights Ms. Jasper's recorded observations that Plaintiff "was emotional as she retold" the story of her motor vehicle accident, "presented with some symptoms of PTSD including avoidance of certain things regarding driving: sleep disturbance, depression, pounding heart, crying sweating, etc. whenever she recalls the events," had suicidal ideation, was "emotional and feeling that the accident has caused her to lose the ability to let things roll off of her," was "labile," and was "emotional and overwhelmed." (Doc. 45 at 8 (citing Doc. 22 at 18; AR at 1397–1410).)

on [Plaintiff's] psychiatric disorder or symptoms." (*See id*. at 17, 19.) As the Court understands the Magistrate Judge's rationale, by not discussing evidence critical to the evaluation of Plaintiff's psychiatric disorder and focusing instead upon only the portions of the evidence that related to Plaintiff's cognitive function, the ALJ failed to support his step-four findings with substantial evidence.

In addition to extracting principles from *Wells*, the Magistrate Judge relied upon persuasive authority from this District to support his reasoning. (*See* Doc. 39 at 14–18 (discussing *Wells*, 727 F.3d at 1064–65; *Robert R. v. Kijakazi*, No. CV 21-1062 MV/SCY, 2022 WL 12374093, at *5–10 (D.N.M. Oct. 21, 2022); *Susan v. Kijakazi*, No. CV 21-364 SCY, 2022 WL 2982925, at *3–5 (D.N.M. July 28, 2022); *Saiz v. Kijakazi*, No. 21CV0310 KRS, 2022 WL 1078576, at *3–5 (D.N.M. Apr. 11, 2022)).) For example, the Magistrate Judge highlighted Judge Yarbrough's decision in *Robert R*. (*See id*. at 17–18.) In that case, the ALJ acknowledged alleged disabling symptoms related to the plaintiff's anxiety and depression, but according to Judge Yarbrough, discounted that same symptom evidence based upon evidence related to a *separate* neurocognitive disorder. 2022 WL 12374093, at *7. More specifically, the ALJ in *Robert R*. discussed the plaintiff's impaired neurocognitive function secondary to a traumatic brain injury, which "[o]n its face, . . . ha[d] no connection to [the p]laintiff's psychiatric disorders of anxiety, depression, or PTSD . . . ." *Id*. Judge Yarbrough emphasized that the ALJ failed to articulate a link between the plaintiff's psychiatric disorders and his traumatic brain injury. *Id*. He further explained that "addressing evidence of [the p]laintiff's neurocognitive disorder did not relieve the ALJ of her obligation to also address non-neurocognitive impairments such as depression, PTSD, anxiety and stress." *Id*. at *6. Yet, the ALJ failed to discuss how these psychiatric disorders affected the

plaintiff's RFC. *Id*. at *7–9. Ultimately, Judge Yarbrough reversed on the ground that "the ALJ failed to properly discuss all of the Plaintiff's combined impairments and that substantial evidence [did] not support the limited consideration the ALJ did give these impairments." *Id*. at *1.

Drawing analogies from *Robert R*., the Magistrate Judge determined that the ALJ in this case failed to explain how Plaintiff's cognitive functioning – impacted by post-concussive syndrome sustained during a motor vehicle accident – was related to her anxiety disorder. (Doc. 39 at 18.) In the absence of such an explanation, and because the ALJ failed to otherwise address Plaintiff's anxiety disorder at step four of the sequential evaluation process, the Magistrate Judge concluded that the ALJ's RFC assessment was not supported by substantial evidence. (*Id*. at 18–19.) The Court is satisfied that the Magistrate Judge's analysis in this regard is well-reasoned and persuasive.

Trying a slightly different tack, the Commissioner submits that any failure by the ALJ to discuss Plaintiff's mental impairments at step four was "rendered harmless by the ALJ's articulated reasoning and more thorough discussion at step two." (Doc. 40 at 3 (citing Doc. 26. at 9–10).) However, to characterize the ALJ's step-two discussion of Plaintiff's anxiety disorder as "more thorough" than her step four discussion is misleading. The ALJ only *briefly* discussed Plaintiff's anxiety disorder at step two, and she did not broach the topic at step three[4] or, more critically, at step four. (*See* AR at 18–23.) This is true despite the ALJ's acknowledgment that "[t]he mental residual functional capacity used at steps [four] and [five] of the sequential evaluation process *requires a more detailed assessment*" than her discussion of limitations at steps two and three. (AR at 19 (emphasis added).) Moreover, for the reasons that follow, the Court agrees with Plaintiff's

---

[4] Although the Magistrate Judge noted that the "entirety of the ALJ's discussion regarding [Plaintiff's] psychiatric impairment (anxiety) occurred at steps two and three" of the ALJ's analysis (*see* Doc. 39 at 16 (citing Doc. 26 at 8–9; AR at 18–19)), the undersigned finds that the ALJ's discussion of Plaintiff's anxiety disorder was limited to step two. (*See* AR 18–20).

assessment that the ALJ's "step two analysis cannot be substantial evidence at step four because it was deficient." (*See* Doc. 45 at 8.)

At step two, the ALJ only discussed Plaintiff's anxiety disorder in combination with her post-concussive syndrome. (*See* AR at 18.) She observed that Plaintiff "only received short-term treatment for mental health issues, including a couple of counseling sessions with her husband." (AR at 18.) Beyond that, though, the ALJ merely noted "no more than mild limitations" in the four broad areas of mental functioning, or the "Paragraph B" criteria, and found that Plaintiff's "mental symptoms were . . . adequately managed with minimal treatment throughout the relevant period." (AR at 18–19 (citing AR at 44–92 (Administrative Hearing Transcript), 351–60 (Third-Party Function Report of Plaintiff's Daughter), 371–80 (Plaintiff's Function Report), 438–42 (Plaintiff's Educational Transcript)).) The ALJ did not indicate whether the "mental symptoms" to which she referred were cognitive or psychiatric, and the records she cited do not clarify this issue. Ultimately, the ALJ determined that Plaintiff's mental impairments "cause[d no] more than minimal limitation in [her] ability to perform basic mental work activities and [were] therefore nonsevere." (AR at 18.)

In contrast to her brief mention of Plaintiff's anxiety disorder, the ALJ outlined cognitively-relevant findings from a 2011 neuropsychological assessment by Robert Sherrill, Ph.D., indicating that she was "persuaded by the opinion of [Dr. Sherrill, who] found that the claimant was cognitively intact." (AR at 19 (citing AR at 1429–33).) As Plaintiff explained and the ALJ acknowledged, Plaintiff "developed cognitive problems secondary to a concussion" after she was involved in a motor vehicle accident. (AR at 20.) Although the 2011 neuropsychological assessment also produced findings relevant to Plaintiff's anxiety disorder, the ALJ only discussed the findings that related on their face to Plaintiff's post-concussive syndrome. (*See* AR at 18 (the "neuropsychological assessment conducted in December 2011 revealed no clinically significant

evidence of organic disruption of attention, memory, or high-level cognitive ability"; the "neurophysiological examination in December 2011 . . . found that the claimant was cognitively intact").) As Plaintiff puts it, "the ALJ picked and chose amongst the findings of neuropsychologist [Dr.] Sherrill . . . , only discussing cognitive findings[] and ignoring the evidence related to Ms. Iven's anxiety." (Doc. 45 at 6 (citing AR at 21).) While the ALJ included language within her step-four analysis to indicate that she "considered all symptoms" as well as "medically determinable impairments," she failed to explicitly discuss Plaintiff's anxiety impairment at that step of her analysis. (*See* AR at 20–23.) At most, she once again mentioned Dr. Sherrill's 2011 neuropsychological evaluation, noting that there was "no clinically significant evidence of an organic disruption in [Plaintiff's] attention, memory, or higher-level cognitive flexibility." (AR at 21.)

In his PFRD, the Magistrate Judge delved into the impetus and the components of Dr. Sherrill's 2011 neuropsychological evaluation. (*See* Doc. 39 at 16–18.) He explained, for example, that it was Plaintiff's counselor, Rebecca Jasper, who referred Plaintiff to Dr. Sherrill "for an assessment of her capacity for attention, memory and cognitive flexibility, *as well as of her emotional status*." (*Id.* at 17 (citing AR at 1431) (emphasis added).) The Magistrate Judge acknowledged that the ALJ "mentioned [Dr. Sherrill's] cognitive examination at steps two and four" but emphasized that she failed to mention the "test results or diagnostic impressions related to [Plaintiff's] psychiatric disorder–anxiety." (*Id.* (citing AR at 19, 21).) Gleaned from his own examination of Dr. Sherrill's records, the Magistrate Judge highlighted Dr. Sherrill's finding that Plaintiff's anxiety-related test results were "'notable for . . . moderate anxious arousal (about the 90th percentile) with autonomic symptoms[;] moderate defensive avoidance of this emotional stress[;]' and a tendency to unconsciously convert emotional stress 'into diffuse physical complaints for which physicians can identify little or no disease basis . . . .'" (*Id.* (citing AR at

1432).) Further, the Magistrate Judge observed that Dr. Sherrill's diagnostic impression included "anxiety disorder not otherwise specified, with post-traumatic features" and "proneness to somatization of anxiety." (*Id*. (citing AR at 1432).) Yet, the ALJ made no mention, in his step-two or step-four discussions of the 2011 neuropsychological evaluation, of these anxiety-related findings and diagnostic impressions. (*See* AR at 18–23.)

In sum, although the ALJ purported to discuss the records related to Plaintiff's anxiety disorder at step two, she merely noted short-term mental health treatment and suggested that Plaintiff's mental impairment symptoms were "adequately managed with minimal treatment." (AR at 18–19 (citing AR at 44–92, 351–60, 731–80, 438–42, 1397–1410).) Significantly, the ALJ limited her discussion of Dr. Sherrill's 2011 neuropsychological assessment to those findings that related to Plaintiff's cognitive functioning and omitted any discussion of findings that related to Plaintiff's anxiety disorder. (*See* AR at 18 (citing AR at 1429–33).)

In their briefing on the Commissioner's Objections to the PFRD, Plaintiff and the Commissioner each rely upon post-*Wells* decisions from the Tenth Circuit. The Commissioner points to *Bradley v. Colvin*, 643 F. App'x 674 (10 Cir. 2016) (Doc. 40 at 4), and Plaintiff cites *Williams v. Berryhill*, 682 F. App'x 665 (10th Cir. 2017) (Doc. 45 at 6), each insisting that their referenced case is more akin to the present one and therefore instructive.

The Commissioner urges the Court to follow the rationale in *Bradley*, where "the Tenth Circuit rejected the claimant's argument that the ALJ erred in not discussing an impairment in assessing the residual functional capacity." (Doc. 40 at 4 (citing *Bradley*, 643 F. App'x at 676).) The Tenth Circuit's holding in *Bradley* was more nuanced, though. First, the court explained that it was "clear" that the ALJ's RFC assessment of the plaintiff's impairments "included [his] hand impairments because the ALJ discussed them *in detail*" at step two of his analysis. 643 F. App'x at 676 (emphasis added). The ALJ observed at step two that the plaintiff had previously suffered

a third metacarpal shaft fracture in his right hand and had been diagnosed with carpal tunnel syndrome. *Id*. The plaintiff's metacarpal fracture, however, had been surgically corrected and did not require ongoing treatment. *Id*. Likewise, the plaintiff underwent a successful carpal tunnel surgery with no record of ongoing treatment and a subsequent examination that "revealed normal hand skills, normal fine tactile manipulation of objects, and no objective signs of carpal tunnel syndrome at all." *Id*. In contrast to the present case, there was nothing in the *Bradley* decision to suggest that the ALJ picked and chose amongst the available evidence or omitted important facts as they related to the plaintiff's hand impairments. *See id*. Given that the ALJ in the present case omitted critical findings related to Plaintiff's psychiatric impairment, focusing instead on only her cognitive functioning, *Bradley* is not helpful to the Court's resolution of the issues before it.

   *Williams*, the case upon which Plaintiff relies, is more instructive. There, the Tenth Circuit found that the ALJ's RFC assessment was not supported by substantial evidence because the ALJ failed to provide a narrative discussion, with citations to the record, to describe how the evidence supported his findings concerning the plaintiff's mental limitations. *Williams*, 682 F. App'x at 670. The ALJ observed, at step four of his analysis in *Williams*, that the state agency physician assessed mild restrictions in the plaintiff's activities of daily living, in her ability to maintain social functioning, and in her ability to maintain concentration, persistence or pace. *Id*. The ALJ, however, failed to consider or discuss the evidence related to the plaintiff's conversion disorder. *Id*. As such, the court held that the ALJ failed to properly assess the Plaintiff's RFC. *Id*.

   Plaintiff argues that, analogously, the ALJ here cited to a neuropsychological record but ignored the implications in that record that pertained to her anxiety disorder. (Doc. 45 at 6.) The Court agrees. Because the ALJ's discussion of the neuropsychological record, both at step two and four of her analysis, was inadequate regarding Plaintiff's anxiety disorder, the rationale expressed in *Williams* supports reversal in this case.

Finally, with respect to the Commissioner's suggestion that any error by the ALJ in her evaluation of Plaintiff's mental impairments was harmless, the Court disagrees. As Plaintiff points out, a proper step-four assessment of Dr. Sherrill's non-cognitive findings and Ms. Jasper's treatment notes may produce a more restrictive RFC. (*See id.* at 9.) A more restrictive RFC accounting for Plaintiff's psychiatric impairments, in turn, may result in a finding of disability. Accordingly, the Court will overrule the Commissioner's objections and adopt the Magistrate's PFRD.

Wherefore,

**IT IS, THEREFORE, ORDERED** that the Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 39) is **ADOPTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 22) is **GRANTED IN PART**.

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE